FILED
United States Court of Appeals
Tenth Circuit

December 22, 2025

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MANUEL KEVIN DUTRA,

    Defendant - Appellant.

No. 25-6113
(D.C. Nos. 5:24-CV-01361-R &
5:22-CR-00388-R-1)
(W.D. Okla.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **BACHARACH**, **MORITZ**, and **ROSSMAN**, Circuit Judges.
_____

Manuel Dutra, a federal prisoner proceeding pro se,[1] seeks a certificate of appealability (COA) to challenge the district court's denial of his 28 U.S.C. § 2255 motion to vacate his conviction, which asserted ineffective assistance of counsel (IAC). Because we conclude reasonable jurists could not have decided the motion differently, we deny his COA request and dismiss this matter.

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[1] Although we liberally construe Dutra's pro se filings, we do not act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

## Background

In April 2015, Dutra pleaded guilty to violating Okla. Stat. tit. 21, § 644(C) (2014), a domestic-violence statute.[2] Then, in September 2023, Dutra pleaded guilty in federal court to possessing a firearm in violation of 18 U.S.C. § 922(g)(9), which prohibits persons convicted of misdemeanor domestic-violence crimes from possessing firearms. Dutra later filed a motion to withdraw his federal guilty plea, arguing that his counsel was ineffective. The district court denied the motion and sentenced Dutra to 60 months in prison. He appealed, but we dismissed his appeal based on the appeal waiver in his federal plea agreement. *United States v. Dutra*, No. 24-6135, 2024 WL 4509211, at *1 (10th Cir. Oct. 17, 2024) (unpublished).

Several months after his appeal, Dutra renewed his IAC arguments in a § 2255 motion. The district court found no deficient performance and denied a COA. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (explaining that IAC claims require showing both deficient performance and resulting prejudice). Dutra now requests a COA from this court. *See* 28 U.S.C. § 2253(c)(1)(B) (requiring COA to appeal from "the final order in a proceeding under [§] 2255").

## Analysis

We may issue Dutra a COA only "if [he] has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy that standard, he must show that "reasonable jurists could debate whether . . . [his motion] should have been resolved in a

---

[2] This statute has since been amended. We refer to the version in effect at the time of Dutra's plea.

different manner." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). This threshold inquiry requires more than "the absence of frivolity," *id.* at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)), but it is not a full review of the merits, *Buck v. Davis*, 580 U.S. 100, 115 (2017).

Dutra argues that several aspects of the district court's ruling are debatable. To begin, he contends his counsel was ineffective because counsel never informed him that § 922(g)(9) required a "particular kind of relationship" in his state case or investigated whether the requisite relationship in fact existed. Aplt. Br. 5. Section 922(g)(9) applies when an individual "has been convicted . . . of a misdemeanor crime of domestic violence," defined to include a misdemeanor involving the use of physical force against a victim with whom the defendant "has a current or recent former dating relationship," 18 U.S.C. § 921(a)(33)(A)(ii). So if counsel had reason to believe that Dutra and the state-court victim were or had been recently dating, then counsel had reason to believe § 922(g)(9) applied. *See United States v. Hayes*, 555 U.S. 415, 421 (2009) (holding that § 922(g)(9) applies whenever predicate offense was committed within specified type of domestic relationship).

Counsel did, for two reasons. First, the victim stated in a 2016 request for a protective order that she and Dutra were in, or had been in, a dating relationship. Moreover, at the time of his plea, the state crime Dutra pleaded guilty to made it a misdemeanor to commit assault and battery against "a person with whom the defendant is or was in a dating relationship." § 644(C).

3

Seeking to undermine these reasons, Dutra first points to a notarized, November 2024 letter submitted by the victim in Dutra's state case, indicating that she began dating Dutra only *after* he pleaded guilty to the Oklahoma offense. Although this letter may have warranted further investigation of Dutra's relationship, counsel did not have the benefit of it when advising Dutra to plead guilty in September 2023. Instead, counsel averred that she asked Dutra about his relationship to the victim and satisfied herself that they had an appropriate relationship before advising he plead guilty; nothing in the record contradicts counsel's testimony. Next, Dutra points to the affidavit supporting his state arrest warrant, which lists a California address, to undercut the existence of any relationship between himself and the victim. But this doesn't undermine the reasonableness of counsel's belief: dating does not require living in the same state. Thus, Dutra fails to create any debate about counsel's performance as to the applicability of § 922(g)(9).

Dutra's subsequent assertion is that counsel failed to develop § 921(a)(33)(B) arguments, particularly arguments grounded in § 921(a)(33)(B)(i)(II)(bb). Per that subsection, § 922(g)(9) does not bar firearm possession if the underlying domestic-violence offense resulted from a guilty plea that was not knowing and intelligent. Dutra suggests that his state plea was invalid because he never knowingly waived his right to a jury trial. But the wording of his signed state plea indicates that he knowingly and voluntarily waived his rights after being informed of them. And if Dutra is suggesting his state plea was not knowing or voluntary either because he was never informed that his Oklahoma misdemeanor required a certain kind of relationship with the victim or that

such a relationship did not, in fact, exist, we reject those arguments for the same reasons we reject them in relation to his federal plea. Counsel had reasonable grounds to conclude the requisite relationship existed and thus had no reason to raise § 921(a)(33)(B)(i)(II)(bb) arguments. Dutra is thus not entitled to a COA on whether counsel ineffectively failed to question the validity of his state plea.[3]

Finally, Dutra argues his counsel was ineffective at sentencing because he did not "cite authority" when objecting. Aplt. Br. 6. That argument is belied by the record, which suggests, as the district court noted, that "counsel zealously advocated for . . . Dutra at sentencing," including securing a reduction of his criminal-history points. R. vol. 1, 215.

In sum, we conclude that reasonable jurists could not debate that Dutra received constitutionally sufficient representation.

**Conclusion**

Accordingly, we deny Dutra's request for a COA and dismiss this appeal. But we grant his pending motion to proceed in forma pauperis.

Entered for the Court

Nancy L. Moritz
Circuit Judge

---

[3] Dutra relatedly suggests that the government conceded his federal plea was involuntary in its direct-appeal briefing. Dutra is incorrect. In its motion to enforce Dutra's appeal waiver, the government conceded that the district court did not address the waiver on the record, but it argued that such failure "did not affect . . . Dutra's substantial rights" because his waiver was nevertheless knowing and voluntary. Motion to Enforce Appellate Waiver at 8, *Dutra*, No. 24-6135, Dkt. No. 30 (cleaned up) (quoting *United States v. Edgar*, 348 F.3d 867, 873 (10th Cir. 2003)). That is far from a concession his federal plea was involuntary.